IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Melissa A. Gentry, ) | |
| ) | Civil Action No. 6:12-1545-CMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on August 8, 2008, alleging that she became unable to work on August 22, 2008. The applications were denied initially and on reconsideration by the Social Security Administration. On May 26, 2009, the plaintiff

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Benson Hecker, an impartial vocational expert, appeared on April 6, 2010, considered the case *de novo*, and on July 9, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. During the course of the proceedings, the plaintiff's attorney conceded that this was a Title XVI only case as the date last insured was June 30, 2006. Thus, the ALJ treated this as a withdrawal of the application for DIB, and the remainder of the decision was based solely upon the plaintiff's application for SSI benefits. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 3, 2012. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.
>
> (2) The claimant has not engaged in substantial gainful activity since August 22, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3) The claimant has had the following severe impairments: fibromyalgia, scoliosis, irritable bowel syndrome, abdominal migraines, depression and bipolar disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations: occasional climbing of ladders and concentrated exposure to hazards due to the medications she was taking. The claimant is also limited to occupations which require no more than the basic demands of unskilled work in that they are classified as semi-skilled jobs with an SVP of three or less, as well as no more than occasional interaction with the public and co-workers but frequent interaction with supervisors.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7)     The claimant was born on July 9, 1980, and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)) 416.969 and 416.969(a))..

> (11) The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2008, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**EVIDENCE PRESENTED**

The plaintiff had a history of depression and anxiety, which was treated by her family practitioner with medications (Tr. 611, 632, 807). The plaintiff also had a history of syringomyelia (fluid-filled cysts that form within the spinal cord), scoliosis, fibromyalgia, and back pain. In October 2006, an MRI of the plaintiff's back showed that her syringomyelia had "largely improved" and her scoliosis was characterized as "mild" (Tr. 664). Additionally, another MRI in July 2009 showed her syringomyelia continued to improve and her scoliosis was "[s]table to mild" (Tr. 952, 954-56). The plaintiff also had a history of abdominal complaints, but multiple work-ups in 2007 and 2008 were normal, and her abdomen was normal upon examination (Tr. 632-40, 673-93, 759-67, 823).

In August 2008, the plaintiff established care with family practitioner Arthur Godfried, M.D. (Tr. 835-50). Upon examination, Dr. Godfried found that the plaintiff had full range of motion in all of her joints (Tr. 841). The following month, Dr. Godfried noted that the plaintiff "has several theories of what is wrong with her" and "keeps bringing up new issues before discussion on one issue is completed." Dr. Godfried also observed that "[s]he does not like discussing the fact that all examination findings, labs and ancillary tests (including AbUS, CT abd) performed in other offices were normal." When the plaintiff insisted on having Lortab prescribed to her, Dr. Godfried stated that he had not located any source of pain and she would need pain management referral if he did not see improvement of her complaints (Tr. 825).

6

In October 2008, state agency physician William Hopkins, M.D., reviewed the record and assessed the plaintiff's physical functional abilities (Tr. 730-37). Dr. Hopkins noted that multiple extended gastrointestinal work-ups were negative, and physical examination showed no loss of strength, range of motion, or significant tenderness (Tr. 731). He found that the plaintiff was only partially credible as her symptoms were in excess of the objective findings. He found that her claims of severe functional limitations for the duration of many years was not reasonable in the face of her ability to take care of a two-year-old and continue childbearing (Tr. 735). Dr. Hopkins concluded that, in an eight-hour work-day, the plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours, and sit about six hours (Tr. 731). A second agency physician, Dale Van Slooten, M.D., reviewed the records and assessed the plaintiff's physical functioning in April 2009 (Tr. 854-61). Dr. Van Slooten also found that the plaintiff was only partially credible as her symptoms were in excess of the objective findings (Tr. 859). He affirmed Dr. Hopkins' functional conclusions (Tr. 855-58).

Also in October 2008, Spurgeon Cole, Ph.D., psychologically evaluated the plaintiff in relation to her application for disability benefits. The plaintiff reported that she and her husband of seven years were currently separated and she had custody of their three children (ages 2, 5, and 8). She said she related well to peers and teachers, but was somewhat shy and reserved. She reported some thoughts of self-harm, but denied any intent. Aside from seeing a psychologist for about four months in 1999 or 2000, the plaintiff had never received treatment from a mental health professional. She said she became very tense and anxious around people. She said that she could not work because she did not like being around people. The plaintiff reported that during the day she cared for her children, cooked, cleaned, and did laundry. She handled money and drove (Tr. 738-40). She sometimes went to the grocery store, Wal-Mart, school events, out to eat, and visit with her husband's family. Dr. Cole found that the plaintiff had satisfactory communication and

social skills and indicated that rapport was adequately established. She had no difficulty reading. Her thought processes were logical and goal-directed. Dr. Cole indicated that the plaintiff had satisfactory memory, remained focused during the evaluation, and exhibited good concentration and cognitive ability. Dr. Cole indicated that the plaintiff could follow simple as well as fairly detailed instructions. He stated she was able to "self-structure and execute daily living activities." He diagnosed depression, "[r]ule out anxiety disorder," and "[s]ocial phobia features." Dr. Cole stated that "[Plaintiff] says she cannot work because she does not like being around people" and "[s]he would need employment where she does not have to work directly with the public" (Tr. 738-40).

State agency psychologist Craig Horn, Ph.D., reviewed the records and assessed the plaintiff's mental functioning in November 2008 (Tr. 741-58). Dr. Horn summarized and discussed Dr. Cole's examination and the plaintiff's reported daily activities. He noted that plaintiff could follow both simple and fairly detailed instructions. He noted that the plaintiff primarily had difficulty with social interactions, but she did have satisfactory communication and social skills. Dr. Horn also observed that although she avoided social interactions, she did get out and drive, shop, and occasionally attend school events. He also noted that she cared for three children (ages two, five, and eight). Dr. Horn concluded that the plaintiff's psychological impairments were severe, but they did not preclude simple, routine tasks away from the public (Tr. 753, 757).

In February 2009, the plaintiff saw Dr. Godfried for medication refills and reported that she was "doing quite well." Dr. Godfried again noted that "she has had multiple negative workups, invasive and non-invasive, in multiple organ systems" (Tr. 794).

On March 23, 2009, the plaintiff saw Jamilla Stone, M.D., for a regular check-up. She complained of mild paranoia, but denied suicidal/homicidal ideations. She also continued to complain of mild abdominal/pelvic pain, and she had recently been treated for a urinary tract infection (Tr. 1017). The plaintiff's physical exam was normal. She reported

an improvement in mood, but stated she continued to feel depressed. The plaintiff stated that she was able to participate in activities with her children like cheerleading, but stated she felt paranoid in large groups of people and when she is driving. The plaintiff also complained of an increasing burning pain in her legs when she walked for a long distance and that her feet felt cold. Her prescription for Neurotin was increased, and she was continued on Abilify, Depakote, Effexor, Amitriptyline HCL, Lortab, and Klonopin (Tr. 1019-21).

In April 2009, a second agency psychologist, Larry Clanton, Ph.D., reviewed the records and assessed the plaintiff's mental functioning (Tr. 862-79). Dr. Clanton summarized and discussed the plaintiff's recent treatment notes and affirmed Dr. Horn's conclusion. Dr. Clanton also opined that, although she was not well-suited for working with the general public, the plaintiff could interact appropriately with supervisors and co-workers (Tr. 874, 878).

On March 22, 2010, the plaintiff was again seen by Dr. Stone for throat pain and worsening depression and mood swings. She denied suicidal or homicidal ideations (Tr. 1081). The plaintiff's prescription for Depakote was increased (Tr. 1084). At a follow-up on April 1, 2010, the plaintiff reported that her husband had left her since her visit the week before. She had some improvement in mood lability with the increase in Depakote. The plaintiff stated she was very depressed about her husband leaving her, but she denied suicidal or homicidal ideations (Tr. 1068). Her prescription for Depakote was again increased (Tr. 1070). The plaintiff was seen by Dr. Jessica Pollard on April 9, 2010, for a follow-up. The plaintiff reported that she remained depressed though her mood swings were stable. Dr. Pollard increased the plaintiff's prescription for Effexor as had been previously planned by Dr. Stone (Tr. 1056-59).

In March 2010, forensic psychiatrist Dennis Chipman, M.D., examined the plaintiff at the request of her counsel (Tr. 1022-26). The plaintiff said she had a good

9

childhood, but she was raped at age 15. She said she had been married for nine years, but was currently going through a divorce. She lived with her three daughters (ages 3, 7, and 9). She said that she could not work due to "nerves and depression" (Tr. 1022, 1024). She said that her anxiety increased around people. She said that she got up around 5:30 a.m. and prepared her children to go to school. She said she would then try to clean and do housework, but it went slowly. Dr. Chipman noted that the plaintiff appeared uncomfortable and a bit emotional. He said her concentration and attention span were decreased and her judgment and insight did not appear good (Tr. 1024). Dr. Chipman diagnosed "[c]onsider mood disorder," "[c]onsider pain disorder," and personality disorder (Tr. 1025 (also diagnosing chronic back pain and abdominal migraine)). He noted that the plaintiff had some paranoid thinking but her symptoms did not rise to "clear-cut psychotic levels" (stating that "probably under additional stress [her symptoms] would rise to that level"). He stated that the plaintiff did not relate very well to people for the most part and opined she would have difficulty with co-workers as well as supervisors. He also opined that the plaintiff "would have much difficulty maintaining any persistence in a typical workday" and would be absent from work often (Tr. 1026).

The plaintiff testified at the hearing that she could not work due to her nerves and her depression/bipolar disorder (Tr. 156, 162-63 (later affirming that the main reasons that she was not working was due to "manic depress[ion] and anxiety")). She said she had tried committing suicide, but she had never been hospitalized as a result (Tr. 163-64). She said that her mental condition had stabilized with medications but she was still paranoid, and she went into severe depression when she and her husband separated (Tr. 159).

The plaintiff testified that she did not have any problems with sitting. She said that she could stand for 30 to 45 minutes. She said that, when she walked, it felt "like my legs are going to give out" (Tr. 158-59). She said she had fibromyalgia that caused pain in her arms, neck, and low back (Tr. 160-61). She said that she had difficulty picking up

10

and carrying things due to pockets of fluid in her low back (Tr. 159). She said she had scoliosis that caused her hips to ache when the weather was cold. She said her hips also had limited motion (Tr. 161). She also said she had abdominal migraines, irritable bowl syndrome, and acid reflux (Tr. 157, 162).

The plaintiff testified that during the day she helped her seven- and nine-year-olds get ready for school, cared for her three-year-old, cooked, did laundry and dishes, and played with her children outside (Tr. 150-55). She said she did the grocery shopping (Tr. 151-52). She stated that she swept and vacuumed about once a week, but she did not like the noise (Tr. 154). She said that she could cook and clean the house for 30-35 minutes, but would stop because she "get[s] bored of doing it and then my nerves get bad if something is making too much noise" (Tr. 171).

## **ANALYSIS**

The plaintiff alleges disability commencing August 22, 2008, at which time she was 28 years old. She went to school until the eleventh grade, and she obtained a General Equivalency Diploma ("GED") (Tr. 144). The ALJ found that the plaintiff could perform a limited range of medium work (Tr. 124). The plaintiff argues that the ALJ erred by (1) finding that she was not completely credible; and (2) finding that she admitted that she was able to work as long as it did not involve direct contact with the public.

The plaintiff first argues that the ALJ erred in making his credibility determination. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment

11

> reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id.* at 565 n.3 (*quoting Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the

effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)   the individual's daily activities;

(2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)   factors that precipitate and aggravate the symptoms;

(4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

13

> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. In discounting the plaintiff's credibility, the ALJ outlined at least four inconsistencies between the plaintiff's alleged symptoms and the record evidence. First, the ALJ found that the plaintiff's allegations that she was so limited that she could not perform any work were undermined by her own daily activities (*see* Tr. 123, 127-29). *See* 20 C.F.R. § 416.929(c)(3)(i) (ALJ may consider the claimant's daily activities in evaluating credibility). The plaintiff was the primary caretaker of her three young children, and she prepared breakfast and lunch for them daily. She also did some cooking, cleaning, and laundry, as well as grocery shopping on occasion (Tr. 128; *see* Tr. 330-37). In October 2008, the plaintiff reported to Dr. Cole that she and her husband were separated and she had custody of their three children, who were ages two, five, and eight (Tr. 738). *See Johnson v. Astrue*, No. 3:09–808–CMC–JRM, 2011 WL 767445, at *12 (D.S.C. Jan. 13, 2011) (noting ALJ properly referenced the plaintiff's activities of daily living, including caring for a young child, in assessing the plaintiff's credibility); *Horne v. Astrue*, No. 3:06–3310–HMH–JRM, 2007 WL 4443167, at *6 (D.S.C. Dec. 14, 2007) (same). The plaintiff also reported that she drove, watched television, shopped, handled money, and was able to follow simple and fairly detailed instructions. The ALJ further noted that the plaintiff testified at the hearing

that she sometimes played ball with her children, and she took care of her personal needs (Tr. 128; *see* Tr. 155).

Second, the ALJ found that the plaintiff's allegations were inconsistent with Dr. Cole's opinion (*see* Tr. 128-29). *See* 20 C.F.R. § 416.929(c)(1) (ALJ may consider the medical opinions in evaluating credibility). After an interview and examination, Dr. Cole opined that the plaintiff had satisfactory communication and social skills (Tr. 738). He also opined that the plaintiff had satisfactory memory, good concentration and cognitive ability, and could follow simple instructions as well as fairly detailed instructions (Tr. 738-40). He opined that she was able to "self-structure and execute daily living activities" (Tr. 739).

Third, the ALJ found that the plaintiff's allegations were inconsistent with her ability to establish rapport with Dr. Cole (Tr. 128). *See* 20 C.F.R. § 416.929(c)(3)(vii) (setting forth factors to be considered in evaluating symptoms, including "other factors concerning your functional limitations and restrictions due to pain or other symptoms"). The plaintiff argues that her work history supported her allegations that she could not work because she could not be around people (*see* pl. brief at 8).[3] On the contrary, a poor work history does not establish an inability to work. As argued by the Commissioner, there could be numerous reasons that a claimant has a poor work history, including a lack of motivation to work. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir.1993) (lack of motivation is a factor the ALJ can consider in assessing credibility); *see also Timms v. Astrue*, No. 6:07–1748–TLW–WMC, 2008 WL 4200602, at *13 (D.S.C. Sept. 8, 2008) (finding ALJ

---

[3] The plaintiff cites *Cline v. Astrue*, 577 F.Supp.2d 835 (N.D. Tex. 2008) to support her argument. As argued by the Commissioner, *Cline* is not controlling, and its factual circumstances are distinguishable. *Cline* concerned a claimant with significant mood shifts due to bipolar disorder. 577 F. Supp.2d at 850. The *Cline* court explicitly acknowledged that "[m]ere evidence of 'good days and bad days' does not of itself establish an impairment sufficient to require an explicit finding on maintaining employment." *Id*. at 849. However, in *Cline*, the claimant's mental ailment waxed and waned in its manifestation of disabling symptoms. *Id*. at 850. Accordingly, the court determined that it was incumbent upon the ALJ to specifically consider the claimant's highs and lows when determining whether he could perform work on a regular and continuing basis. *Id*. at 849-50. Unlike *Cline*, the evidence in this case does not show that the plaintiff had any significant highs and lows or that her abilities fluctuated with time.

properly evaluated claimant's credibility where ALJ noted the claimant never worked and did not seem to have motivation to work). The ALJ reasonably found that the rapport that the plaintiff established with Dr. Cole upon her first time meeting him indicated that she could, to some extent, interact with others in a work setting (Tr. 128).

Fourth, the ALJ found that the plaintiff's allegations of extreme limitations were not supported by the objective medical evidence (Tr. 128). *See* 20 C.F.R. § 416.929(c)(2) (ALJ may consider the objective medical evidence in evaluating credibility). Although the plaintiff claimed that she had limited range of hip motion and her legs felt like they were going to give out, physical examinations were normal (*see* Tr. 731, 735) (state agency physician Dr. Hopkins' opinion discussing medical records and opining that the plaintiff's symptoms were in excess of objective findings); Tr. 855, 859 (state agency physician Dr. Van Slooten's opinion of same)). For example, treatment notes indicated that the plaintiff had full range of motion in all joints (Tr. 841 (August 2008); Tr. 990 (May 2009)), and she had normal reflexes, coordination, and muscle strength and tone (Tr. 912 (September 2009)).

Additionally, the ALJ found that the plaintiff had admitted to Dr. Cole that she could perform work where she did not have to work directly with the public (Tr. 128). *See* 20 C.F.R. § 416.929(c)(1) and (4) (ALJ may consider the consistency of the claimant's own statements in evaluating credibility). The plaintiff argues that this finding was error as her testimony, taken as a whole, leads to a different conclusion (pl. brief at 8-9). However, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial . . . § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." *Blalock*, 483 F.2d at 775 (internal quotation marks and citations omitted). In his report, Dr. Cole stated that "[Plaintiff] says she cannot work because she does not like being around people," and "[s]he would need employment where

16

she does not have to work directly with the public" (Tr. 740). Based on Dr. Cole's report, it was reasonable for the ALJ to find that the plaintiff admitted she could work away from the public, which is a statement that is inconsistent with her claims of disability.

The plaintiff further argues that the ALJ erred in assessing her credibility because medical sources did not question the credibility of her complaints (pl. brief at 7-8). The plaintiff relies on *Hernandez-Devereaux v. Astrue*, 614 F.Supp.2d 1125 (D. Ore. 2009). In *Hernandez-Devereaux*, the ALJ rejected three medical opinions because they were based on a claimant's subjective statements, which the ALJ found were not credible. *Id*. at 1144-46.  The court found that the ALJ's basis for rejecting the opinions was erroneous. *See id.* at 1146 ("The fact that [the physicians] relied, in part, on [the claimant's] self-report is not a legitimate basis, in this case, for rejecting their opinions.").  In so holding, the court noted that the three opinions were not based solely on the claimant's subjective statements, but were also supported by objective medical evidence (including test results) and were consistent with the other record evidence. *Id*. at 1144-47.  The court also noted that none of the opining physicians had indicated that they questioned the veracity of the claimant's statements. *Id*. at 1144-47.  Finally, the court found numerous errors in the ALJ's articulated bases for discounting the claimant's credibility. *See id.* at 1147-51.  Within its lengthy credibility discussion, the court did observe that, although several physicians noted the claimant's tendency to exaggerate or speak in hyperbole, the physicians did not "doubt her efforts or her story" and they found her histrionics were a part of her medical condition. *Id*. at 1148. However, this discussion by the court was within the context of addressing and rejecting an argument by the Commissioner that *Hernandez-Devereaux* was analogous to *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). *See Hernandez-Devereaux*, 614 F. Supp. 2d at 1148. The court did not make any general finding that a physician must comment that a claimant is "not credible" or "exaggerating symptoms" or "malingering"

17

before an ALJ may so find. Indeed, the court found numerous errors in the ALJ's credibility assessment. *See id.* at 1147-51.

As argued by the Commissioner, the plaintiff's reliance on *Hernandez-Devereaux* is misplaced because it is not binding authority in this district and it has little persuasive value as the legal issues raised are distinguishable from the facts and issues presented here. The ALJ in the instant case did not discount any medical opinions because they were based on the plaintiff's subjective statements. Also, unlike *Hernandez-Devereaux*, in this case the ALJ discounted the plaintiff's credibility based upon numerous inconsistencies that she properly considered under the regulations.

Based upon the foregoing, this court finds that the ALJ's credibility finding was supported by substantial evidence, and the plaintiff's allegations of error are without merit.

The plaintiff further argues that, in considering a claimant's abilities to perform work activities, the Commissioner must resolve any doubt as to the severity of impairments in favor of the claimant (pl. brief at 9 (citing SSR 85-28, 1985 WL 56856, at *4). The authority cited by the plaintiff does not discuss the ALJ's consideration of residual functional capacity – rather, it addresses the standards for dismissing cases at step two of the sequential evaluation process. *See* SSR 85-28, 1985 WL 56856, at *4 ("Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation process should not end."). The plaintiff's case was not dismissed at step two, and SSR 85-28 is irrelevant to the issues before the court.

The ALJ's residual functional capacity finding is supported by substantial evidence. In assessing the plaintiff's functional abilities, the ALJ also considered and weighed the medical source opinions (see Tr. 129). With respect to the plaintiff's mental abilities, the ALJ gave little weight to Dr. Chipman's opinion but significant weight to the opinions of Drs. Cole, Horn, and Clanton (Tr. 129). Notably, the plaintiff does not challenge

the ALJ's findings as to the medical source opinions. Accordingly, the plaintiff has waived any argument as to the medical source opinions. *See Newton v. Astrue*, 559 F.Supp.2d 662, 670 (E.D.N.C. 2008) (noting that an issue not argued in plaintiff's brief is deemed waived). The ALJ reasonably discounted Dr. Chipman's opinion as it was inconsistent with the record evidence. *See* 20 C.F.R. §§ 416.927(c)(2), (4) (an opinion is entitled to less weight if it is inconsistent with the record as a whole or the treatment provided). Furthermore, the ALJ reasonably gave significant weight to the opinions of Drs. Cole, Horn, and Clanton as the opinions were well-explained and were consistent with the plaintiff's activities of daily living. *See id.* § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 2, 2013                                                                                       s/ Kevin F. McDonald
Greenville, South Carolina                                                       United States Magistrate Judge